2025 IL App (1st) 230329-U

No. 1-23-0329

Order filed September 30, 2025

SECOND DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court |
| Plaintiff-Appellee, | ) ) | of Cook County |
| v. | ) ) | No. 96 CR 00123 (03) |
| TYWON KNIGHT, | ) ) | Honorable Neera Lall Walsh, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1        *Held*: We reverse the denial of defendant's postconviction petition and reduce his sentence for first degree murder because it is unconstitutionally disparate to his codefendant's sentence.

¶ 2        After a jury trial, Tywon Knight was convicted of first degree murder, aggravated kidnapping, and aggravated vehicular hijacking. Knight was sentenced to 100 years' imprisonment for the murder charge, 30 years for aggravated vehicular hijacking, and 15 years for aggravated kidnapping, to be served consecutively, for a total of 145 years. His codefendant, Richard Morris, was originally sentenced to death, but that sentence was commuted to life in prison. After a

subsequent retrial, Morris was ultimately sentenced to 60 years for murder, 30 years for aggravated hijacking, and 15 years for aggravated kidnapping, to be served consecutively, for a total of 105 years.

¶ 3        Knight appeals the denial of his postconviction petition after a third-stage hearing. He claims his 100-year sentence for murder is unconstitutionally disparate from Morris' 60-year sentence. Knight also claims the circuit court failed to make a finding as to whether the offenses were committed as part of a continuing course of conduct, which was necessary to impose consecutive sentences. He requests that we exercise our authority to modify his sentence to reduce his 100-year murder sentence and order his sentences to run concurrently.

¶ 4                                    I. BACKGROUND

¶ 5        Knight and Morris were tried simultaneously before separate juries in 1998. The State presented evidence showing that on December 2, 1995, Knight, Morris, Morris' wife Lyda, and Bryan Hoover embarked on a plan to rob a bank in Chicago to fund Morris' and Hoover's plan to flee from prosecution for a separate murder the two had committed in Wisconsin two days earlier.[1] While driving through Chicago, the four noticed a Chevrolet Impala belonging to the victim, Ervin Shorter, parked outside a Kentucky Fried Chicken. The four decided to carjack Shorter. Knight, Morris, and Hoover approached the victim, one of them placed a gun against his head, and the three drove away in Shorter's vehicle with him inside and with Lyda following in the group's vehicle. The group later forced Shorter into the trunk of his vehicle. The group continued to drive around the city, sometimes swapping who was riding in each vehicle. At some point, a witness

_____

[1]Hoover was convicted for the November 30, 1995 murder of Frederick Jones and sentenced to life imprisonment. See *State v. Hoover*, 265 Wis. 2d 607 (Wis. App. 2003). Hoover was charged in this case but was not tried. Knight and Morris were charged but not tried in the murder of Jones in Wisconsin.

driving behind the victim's vehicle observed fingers poking from the trunk and reported this to police.

¶ 6    Knight made an oral statement within 24 hours of his eventual arrest that, at some point in the day, he and Morris were in Shorter's vehicle and stopped in an alleyway with the intention that Morris would kill Shorter. Morris instructed Shorter to get out of the trunk and lie on the ground. After Shorter complied, Morris shot the victim twice in the head, killing him. Officer testimony established that later in the day, two police officers saw Knight and Morris exiting Shorter's vehicle. Upon noticing the police, the two fled; the officers pursued and apprehended them.

¶ 7    Morris gave a handwritten statement consistent with Knight's account, admitting that he shot Shorter. At trial, however, Morris disavowed the statement and testified that Hoover shot Shorter. Morris also testified that it was Hoover's plan to kidnap Shorter and steal his car.

¶ 8    Both Knight and Morris were convicted of first degree murder, aggravated kidnapping, and aggravated vehicular hijacking. Morris' jury found that he personally killed Shorter during the commission of another felony, making him eligible for the death penalty. Thereafter, Morris was sentenced to death for the murder, to a 30-year term of incarceration for aggravated vehicular hijacking and to a 15-year term of incarceration for the aggravated kidnapping, to be served consecutively.

¶ 9    At Knight's 1999 sentencing, the circuit court found that the murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. That finding subjected Knight to an extended term of 60 to 100 years instead of the 20 to 60-year range. See 730 ILCS 5/5-5-3.2(b)(2) (West 1994) (permitting an extended sentence when "a defendant is convicted of any felony and the court finds the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty"). Ultimately, the court sentenced Knight to serve

consecutive terms of 100 years for the murder, 30 years for aggravated vehicular hijacking, and 15 years for aggravated kidnapping.

¶ 10                                   A. Prior Appellate Proceedings

¶ 11        On direct appeal, Knight argued his consecutive and extended sentences violated the sixth amendment based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court established that the right to a jury trial includes that a jury, not a judge, must determine any fact which increases a possible sentence. Though decided after Knight was sentenced, *Apprendi* applied retroactively to cases like Knight's, which were pending on direct review. This court agreed with Knight that the court making the "brutal and heinous" finding itself, rather than putting the issue before the jury, violated *Apprendi*. *Knight*, No. 1-99-0532, (May 6, 2002) (unpublished order under Illinois Supreme Court Rule 23). Our supreme court denied the State's petition for leave to appeal but issued a supervisory order directing us to reconsider in light of its decisions in *People v. Crespo*, 203 Ill. 2d 335 (2001) and *People v. Thurow*, 203 Ill. 2d 352 (2003). *People v. Knight*, 204 Ill. 2d 673 (2003). Those decisions followed the United States Supreme Court's decision in *Cotton*, which held that an *Apprendi* violation that occurred before *Apprendi* was decided could be reviewed under a plain error standard. *Crespo*, 203 Ill. 2d at 347; *United States v. Cotton*, 535 U.S. 625 (2002). Upon remand, we affirmed Knight's convictions and sentences, holding that Knight had not established plain error regarding the *Apprendi* violation because, even if the matter were to be put before a jury, "the evidence overwhelmingly favors a finding that the crime was committed in a brutal or heinous manner." *People v. Knight*, 1-99-0532 (Oct 3, 2003) (unpublished order under Illinois Supreme Court Rule 23).

¶ 12        Although we affirmed Knight's sentence in our 2003 order, we vacated the portion ordering that the sentences be served consecutively. We noted that it was unclear whether the consecutive

sentences were entered pursuant to section 5-8-4(a) or 5-8-4(b) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a), (b) (West 1994)), as the sentencing court mentioned both the need to protect the public and the severe bodily injury inflicted upon the victim. We separately stated that remand was appropriate to allow the circuit court to determine whether Knight's actions constituted a single course of conduct and to order Knight's sentences to run consecutively or concurrently based on that finding. *Knight*, No. 1-99-0532 (Oct. 3. 2003) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13 In 2003, the circuit court resentenced Knight to the same terms for each charge, to run consecutively, for a total of 145 years' incarceration. The circuit court did not make a finding as to whether Knight's actions constituted a single course of conduct. The court acknowledged our court's concern over that matter, noting that it had not said the appropriate "magic words," but then failed to make the finding and instead only said that the court intended for the sentences to be served consecutively.

¶ 14 Knight filed an initial postconviction petition while his direct appeal was still pending. The circuit court summarily dismissed the petition. We affirmed that decision as a dismissal without prejudice, as the issue was not yet ripe, leaving open the possibility of filing another postconviction petition by right. *People v. Knight*, No 1-02-1551 (2003) (unpublished order under Illinois Supreme Court Rule 23).

¶ 15 In 2006, Knight filed a postconviction petition alleging ineffective assistance of appellate counsel. His petition was summarily dismissed by the circuit court, and we affirmed that dismissal. *Knight*, No 1-07-0578 (Oct. 9, 2009) (unpublished order under Illinois Supreme Court Rule 23).

¶ 16                                                B. Morris' Retrial

¶ 17         Our supreme court reversed Morris' conviction in 2004, ruling that his trial counsel was ineffective where she "readily admitted that [Morris] participated in the kidnapping and murder" and introduced other crimes committed by Morris, despite having previously moved to exclude that evidence. *People v. Morris*, 209 Ill. 2d 182, 184-88 (2004). The State was barred from seeking the death penalty on retrial based on Governor Ryan's commutation. *People v. Morris*, 219 Ill. 2d 373 (2006).

¶ 18         Morris was retried in 2006. Morris again testified that Hoover shot Shorter. The State alleged that Morris was the shooter but argued to the jury that, even if they believed Hoover was the shooter, they could find Morris guilty based on his accountability. The jury found Morris guilty of first degree murder, aggravated vehicular hijacking, and aggravated kidnapping. Since the retrial occurred after *Apprendi* was decided, the State submitted two questions to the jury on findings that would subject Morris to either an extended or natural life prison term for murder. But the jury found the State did not prove that either (1) Morris personally killed Shorter during the course of another felony or (2) the murder was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Consequently, the maximum sentence allowed for the murder conviction was 60 years. At sentencing, the State requested the maximum penalty but acknowledged that the jury found Morris guilty based on accountability. Despite the jury's finding, the trial judge remarked that he believed Morris shot Shorter and that Morris was the "moving force" in the crimes. The trial court imposed the maximum sentence of 60 years for first degree murder, 30 years for aggravated vehicular hijacking, and 15 years for aggravated kidnapping, and ordered the terms to be served consecutively. The trial judge remarked that the sentence could have been greater "given other circumstances."

¶ 19                                    C. Instant Postconviction Petition

¶ 20           Knight sought leave to file the instant successive postconviction petition in 2009. Knight

claimed, *inter alia*, that his 100-year murder sentence was unconstitutionally disparate from the

60-year sentence Morris received after his retrial.

¶ 21           Knight previously filed a petition for *habeas corpus* in federal district court in 2007. He

amended the petition to include the disparate sentencing claim asserted in his 2009 state

postconviction petition. In 2010, he filed a motion to stay the federal proceedings pending

disposition of his state postconviction proceedings. The district court denied the motion for stay

and dismissed the *habeas* petition. Regarding his disparate sentencing claim, the court noted that

the Seventh Circuit had "already rejected the argument that disparate sentencing of similarly

situated codefendants violates any constitutional right." *Knight v. Bartley*, No. 07 C 6098, 2011

WL 862046, *4 (N.D. Ill. March 4, 2011) (citing *Dellinger v. Bowen*, 301 F. 3d 758, 768 (7th Cir.

2002)). The court referred to Knight's claim as "plainly constitutionally meritless." (Internal

quotation marks omitted.) *Id*.

¶ 22           In state court, Knight was granted leave to file his successive petition, and he was appointed

counsel. The State filed a motion to dismiss, arguing that the sentences were not disparate. The

State incorrectly represented that Knight was sentenced to concurrent terms while Morris was

sentenced to consecutive terms. Postconviction counsel only addressed the disparity in the murder

sentences and failed to clarify that Knight was serving consecutive terms. Under the mistaken

belief that Knight was serving concurrent terms, the circuit court found Knight had failed to show

an unconstitutional disparity and granted the State's motion to dismiss. On appeal, the State

conceded that Knight's sentences were ordered to be served consecutively. We observed that it

was unclear whether Knight and Morris were similarly situated, since the record of Morris' retrial

7

was not included in the record of Morris' appeal. We remanded for an evidentiary hearing where the parties would have the opportunity to present the facts from Morris' retrial, and the court could fully consider Knight's disparate sentencing claim. *People v. Knight*, 2014 IL App (1st) 122931-U, ¶ 33.

¶ 23       In the order, we listed Knight's three arguments: (1) he was entitled to an evidentiary hearing since the trial court dismissed his petition on an incorrect factual basis, (2) the trial court erred in finding that he could have raised the claim in his initial petition, and (3) postconviction counsel did not provide reasonable assistance by failing to clarify that Knight was serving consecutive terms. *Id.* ¶ 25. After listing those arguments, we stated, "We agree." *Id.* The ensuing analysis, however, only addressed the first argument. Postconviction counsel's assistance was not discussed. Thus, what exactly the panel agreed on was unclear.

¶ 24       As a result, our 2014 order created some confusion on remand. The matter was assigned to a different judge after the judge who presided over the previous second-stage proceedings recused himself. The same postconviction counsel who had previously represented Knight appeared on his behalf again. The State suggested that an unreasonable assistance claim was still pending, which the trial court needed to resolve. The trial court allowed postconviction counsel to remain, reasoning that the 2014 order from this court made no explicit finding of unreasonable assistance. A third-stage evidentiary hearing was held in 2017. No new evidence was introduced and the hearing proceeded on argument alone. During the hearing, defense counsel stated that Morris was found accountable for the acts of Hoover after his retrial. The circuit court ruled that the sentences were not unconstitutionally disparate and denied Knight's petition.

¶ 25       A different panel from the panel that issued the 2014 order reviewed Knight's second appeal of the denial of his postconviction petition. The second panel interpreted the 2014 order as

finding that postconviction counsel provided unreasonable assistance. Accordingly, the panel found that Knight was entitled to new third-stage proceedings with new counsel since he was represented by postconviction counsel who was previously found to have provided unreasonable assistance. *People v. Knight*, 2020 IL App (1st) 170550, ¶ 47. The order stated that postconviction counsel failed to argue "important findings" made by the trial judge at Morris' resentencing, specifically that Morris was the actual shooter and "the moving force" behind the robbery plan that culminated in Shorter's murder. *Id*. ¶ 46. The panel characterized postconviction counsel's assertion that Morris was found accountable in his 2006 retrial as a "misstatement." *Id*. ¶ 44.

¶ 26    On this most recent remand, Knight was represented by private counsel, who argued that Knight received a significantly harsher sentence despite he and Morris being similarly situated, Knight being less culpable, and Knight having less of a criminal record. The State asserted that the circuit court's "brutal and heinous" finding had already been upheld and argued that the finding is the key difference between Knight's sentence and Morris' sentence, both of which were the maximum available to the sentencing judge.

¶ 27    The court denied Knight's petition, finding that his sentence was not unconstitutionally disparate from Morris' sentence. The circuit court found that Knight was less culpable, had a less severe criminal history, and presented more evidence regarding his potential for rehabilitation, but noted that Knight had not fully accepted responsibility for his actions. The court noted that although Knight's sentence was longer, he would be eligible for parole earlier than Morris.[2] The

---

[2]Presumably, the court ascertained defendant's and Morris's parole dates from the Illinois Department of Corrections' (IDOC) website, of which courts may take judicial notice. *People v. Johnson*, 2021 IL 125738, ¶ 54 (finding postconviction court properly took judicial notice of information from IDOC website). Presently, the IDOC website reports a projected parole date for Knight in 2045. This seems inaccurate. Even accounting for day-for-day credit, the soonest eligibility for parole on his 145-year sentence would be later. We observe that the mittimus issued on December 18, 2003 states that the sentences are to run concurrently. It does not appear a corrected mittimus was ever issued.

9

court also stated that although Knight's and Morris' convictions and sentences were based upon the same set of facts, two different triers of fact coming to differing conclusions based on those facts did not represent a violation of Knight's constitutional rights. Knight appealed.

¶ 28                                    II. ANALYSIS

¶ 29        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a mechanism for criminal defendants to challenge their conviction or sentence based on a substantial deprivation of state or federal constitutional rights. *Id.* § 122-1(a). As a collateral proceeding, the Act is limited to claims that were not and could not have been raised on direct appeal. *People v. Allen*, 2015 IL 113135, ¶ 20.

¶ 30        When, as here, a petition proceeds to an evidentiary hearing, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The circuit court serves as the fact finder and must determine "whether the evidence introduced demonstrates that the petitioner is, in fact, entitled to relief." *People v. Domagala,* 2013 IL 113688, ¶ 34.

¶ 31        "When a petition is advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). However, if no new evidence is presented and the issues presented are pure questions of law, our review is *de novo*. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 32                                A. Sentencing Disparity

¶ 33        Knight claims his 100-year sentence for first degree murder is unconstitutionally disparate from the 60-year sentence his similarly situated codefendant, Morris, received after his second trial. Knight asserts that the disparity did not exist until Morris' 2006 retrial and sentencing. As

such, he contends that the issue is not whether he was properly sentenced before the disparity existed. Rather, the issue is whether Knight's sentence is unconstitutionally disparate after Morris' subsequent retrial and sentencing. Knight argues his sentence must be corrected because there is no significant difference between him and Morris to justify the disparity in their sentences.

¶ 34 We agree with this framing of the issue. Any issues related to Knight's 1999 sentencing or 2003 resentencing were either raised and decided on direct appeal or could have been raised but were not. Therefore, such issues are barred by *res judicata* and forfeiture. *English*, 2013 IL 112890, ¶ 22. Thus, our review is limited to considering whether Knight's 100-year murder sentence is unconstitutionally disparate following Morris' retrial.

¶ 35 At the outset, it is important to clarify the basis of Morris' culpability for a proper comparison with Knight's sentence and assessment of his claim. In his petition and brief in this appeal, Knight repeatedly asserts that Morris shot Shorter. Knight may have reason to state so, but the jury at Morris' 2006 retrial did not find that Morris shot Shorter. Morris was convicted based on accountability. Accordingly, we must give effect to the jury's finding and consider Morris as accountable, not the shooter.

¶ 36 Although we reject the premise that Morris was determined to be the shooter, it is not essential to Knight's claim. He is not necessarily required to show that Morris was the shooter or that he was less culpable. A defendant asserting a sentencing disparity claim need only show he and a codefendant are similarly situated. *People v. Godinez*, 91 Ill. 2d 47, 55 (1982). Since both Knight and Morris were convicted of Shorter's murder based on their accountability, they are similarly situated.

¶ 37 We turn to consider whether there is a constitutional basis for Knight's sentencing disparity claim, as only constitutional claims are cognizable under the Act. 725 ILCS 5/122-1(a)(1) (West

11

2022). As noted when discussing Knight's federal *habeas* petition, federal courts have rejected that sentencing disparity between codefendants violates the United States Constitution. *Knight*, 2011 WL 862046, *4. *Stroup v. Enloe*, No. 11-cv-0041, 2014 WL 5785077, *4 (N.D. Ill. Nov. 5, 2014) (observing that no authority supported that disparate sentencing between codefendants amounted to a constitutional claim.). Nevertheless, we are not bound by decisions of lower federal courts. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 34.

¶ 38        Our supreme court has held "fundamental fairness requires that similarly situated defendants not receive grossly disparate sentences." *People v. Fern*, 189 Ill. 2d 48, 58 (1999). Fundamental fairness is not an expressed constitutional provision, but the term has been equated with substantive due process. *People v. Stapinski*, 2015 IL 118278, ¶ 51 ("[T]he essence of due process is fundamental fairness." (Internal quotation marks omitted.). Since substantive due process is implicated, "disparity of sentence is cognizable under the Act in noncapital cases." *People v. Caballero*, 179 Ill. 2d 205, 215 (1997). Substantive due process includes protection against arbitrary and capricious governmental action. *Stapinski*, 2015 IL 118278, ¶ 50. A disparity in sentences between codefendants is not itself a violation of fundamental fairness unless the disparity is arbitrary. *People v. Martinez*, 372 Ill. App. 3d 750, 760 (2007); *Moss*, 205 Ill. 2d at 171 ("To be impermissible, the disparity must be arbitrary and unreasonable."). "An arbitrary and unreasonable disparity between the sentences of codefendants who are similarly situated *** cannot be defended." *Godinez*, 91 Ill. 2d at 55. Accordingly, the constitutional question before us is whether the disparity between Knight's and Morris' sentences is arbitrary. "It is not the disparity that counts, but the reason for the disparity." *People v. Rodriguez*, 402 Ill. App. 3d 932, 940 (2010).

¶ 39        The disparity exists because of conflicting findings made in Knight's original trial and Morris' retrial. In Knight's trial, the judge found the murder to be accompanied by exceptionally

brutal and heinous behavior indicative of wanton cruelty. The jury found the opposite in Morris'

retrial, as well as finding that Morris did not personally kill Shorter during the commission of

another felony, which would have been a separate basis to impose an extended term or natural life

sentence. 730 ILCS 5/5-8-1(a)(1)(b), 5-8-2(a)(1) (West 1994); 720 ILCS 5/9-1(b)(6)(a)(i) (West

1994). The consequence of those findings established the maximum sentence. By his comments

and rulings, the sentencing judge demonstrated that he believed both Knight and Morris deserved

the maximum penalty the law allowed and would impose it. He sentenced Morris to death when

the jury found him eligible and recommended it. He gave Knight the maximum term of 100 years.

And he gave Morris the maximum term of 60 years after his retrial. Thus, the 40-year disparity

results from the conflicting findings.

¶ 40         The facts of this case closely mirror those of *People v. Earullo*, in which an unjust

disparity similarly resulted from conflicting findings. *People v. Earullo*, 113 Ill. App. 3d 774

(1983). Defendants Earullo and Klisz were police officers who were convicted of involuntary

manslaughter and official misconduct after they apprehended and beat their victim to death. *Id.* at

776-85. Earullo received two and a half years for each offense while Klisz received an extended

sentence of eight years for involuntary manslaughter based on a brutal and heinous finding by the

court. *Id.* at 776, 792. This court found that there was no justification for an extended sentence to

be imposed on Klisz where the record showed that Earullo's "actions were no less brutal or heinous

than those of Klisz." *Id.* at 792-93. This court rectified the disparity by lowering Klisz's sentence

to match that given to Earullo. *Id.* at 793. In the case before us, just as in Earullo, we are presented

with defendants who are similarly situated as codefendants equally culpable for the same set of

acts, yet who received conflicting findings regarding the brutal and heinous nature of the offense.

¶ 41 Accordingly, we must consider whether the conflicting findings justify the disparity. When Knight challenged the trial judge's brutal and heinous finding based on *Apprendi*, we found the evidence "overwhelmingly favor[ed]" the finding. *Knight*, 1-99-0532. Indeed, Shorter's murder was manifestly brutal and heinous. Nevertheless, it was within the jury's prerogative to reject that proposition at Morris' retrial, just as it was within the fact-finder's prerogative to find it was true when sentencing Knight in 1999. Different finders of fact may reasonably reach different conclusions on the question, even when considering the same evidence. But, as phrased and as the jury is instructed, the question asks whether the *murder* was accompanied by exceptionally brutal and heinous behavior. It does not ask a fact finder to consider whether an individual defendant's behavior was so. Thus, the finding does not make a distinction between codefendants. When the finding will establish the maximum penalty and, as here, the sentencing judge was disposed to impose the maximum, whatever it may be, the resulting disparity between the codefendants is effectively arbitrary. It follows from the happenstance that different fact finders made different subjective determinations. Independently, the separate findings were legitimate. But when similarly situated codefendants, both found accountable for the same murder, receive grossly disparate sentences based on differing findings about the murder itself, and not a factor that distinguished between them, the disparity is fundamentally unfair. The same murder cannot be both brutal and heinous and not so. A 40-year sentencing disparity resulting from considering a fact to be both true and untrue is capricious and constitutionally intolerable.

¶ 42 For these reasons, we conclude that on the unique facts of this case, Knight's disparate sentence violates his right to due process of law. In the interest of judicial economy, we exercise our authority under Illinois Supreme Court Rule 615(b)(4) (eff. Jan 1, 1967) and reduce Knight's sentence for first degree murder to sixty (60) years' imprisonment.

14

¶ 43                                    B. Consecutive Sentences

¶ 44        Knight also argues that the trial court failed to comply with this court's 2003 remand "to determine whether the offenses at issue were committed as a part of a single course of conduct." Knight urges us to either find that his sentences should run concurrently or remand to the circuit court once again and order the court to make an explicit finding on this point. As we noted, however, Knight failed to appeal the 2003 order resentencing him and he failed to include the issue in his initial 2006 petition. Therefore, the issue is barred by *res judicata*.

¶ 45        Alternatively, Knight argues that if we were to modify his sentence, as we have, we must consider the question anew. We disagree. Whether the sentences should run concurrent or consecutive is distinct from whether Knight's murder sentence was unconstitutionally disparate from Morris' sentence. The issue could have been included in Knight's 2006 initial petition and our resolution of the disparity issue does not require us to revisit the issue.

¶ 46                                    III. CONCLUSION

¶ 47        For the foregoing reasons, we reverse the denial of Knight's petition for postconviction relief and modify Knight's sentence for murder to 60 years' imprisonment.

¶ 48        Reversed.