43 A.3d 1125

**Jose F. LOPEZ**

v.

**STATE of Maryland.**

**No. 2916, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

May 10, 2012.

Piedad Gomez (Paul B. DeWolfe, Public Defender, on the brief) Baltimore, MD, for appellant.

Mary Ann Ince (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: EYLER, DEBORAH S., MATRICCIANI and J. FREDERICK SHARER (Retired, Specially Assigned), JJ.

SHARER, J.

Appellant, Jose F. Lopez, filed a petition for post-conviction relief, as amended and supplemented, in the Circuit Court for Montgomery County. Following a hearing, the court denied appellant's petition on the grounds that laches barred any relief.

Appellant timely appealed and presents the following question, as slightly reframed, for our review:

Did the post-conviction court erroneously deny post-conviction relief on the basis of laches?

We hold that laches is available to bar certain post-conviction relief in cases where sentence was imposed before October 1, 1995. However, because the record in this case is

insufficient to determine whether appellant's petition is barred by laches, we shall vacate the judgment and remand for further proceedings consistent with the following opinion.

## BACKGROUND

Appellant, represented by counsel, was tried by a jury in Case Numbers 39037 and 40877, both involving Cecilia R., 25 years old at the time of the offenses. Ms. R. testified that appellant attacked her in her residence at approximately 11:00 p.m. on July 22, 1985. She was asleep on her bed when she awakened to find appellant on top of her, holding a knife and a towel. Appellant used the towel to try to cover her eyes. After taking some of her money, appellant then attempted to have vaginal intercourse with her. Ms. R. testified that she could "feel his penis at the mouth of my vagina." Appellant also threatened to kill her and, because she suffered from asthma, she thought appellant was going to suffocate her. Ms. R. identified appellant in court as her assailant. The jury convicted appellant of attempted first degree rape, attempted robbery with a dangerous and deadly weapon, and burglary.

Approximately a week after appellant's conviction in the above cases, the State and appellant, still represented by counsel, entered into a plea agreement in Case Numbers 39361, 39362, 39281, and 40129, all involving different victims than Ms. R. The agreement called for the State to recommend, and the Court to accept, a sentence of no more than two consecutive life sentences, accompanied by a waiver of any appellate relief in the cases involving Ms. R., as well as an agreement by the State not to prosecute appellant for any future crimes then unindicted or under investigation.

After appellant waived his right to a jury trial and agreed to plead guilty on the record, the State called Officer Donald Freitag, of the Montgomery County Police Department, who investigated a series of burglaries and rapes in the Silver Spring area in 1984 and 1985. The pertinent facts of those cases follow:

In Case Number 39361, on August 21, 1984, appellant broke into the home of 74–year–old Sylvia D. and forced her to submit to vaginal intercourse.

In Case Number 40129, on July 9, 1985, at approximately 1:30 a.m., appellant broke into the home of 41–year–old Sharon E. and assaulted her with intent to commit rape.

In Case Number 39281, again on July 9, 1985, at approximately 3:30 a.m., appellant broke into the home of 81–year–old Edna M., threatened to kill her with a knife, and forced her to submit to vaginal intercourse.

In Case Number 39362, on July 16, 1985, at approximately 2:00 a.m., appellant broke into the home of 85–year–old Lubba K. and forced her to submit to vaginal intercourse.

The court accepted the pleas and found appellant guilty of the aforementioned offenses.

On May 14, 1986, appellant appeared with counsel for sentencing in these cases, and the court imposed the sentences as follows:

In Case Number 40877, appellant was sentenced to life imprisonment for attempted first degree rape;

In Case Number 39281, appellant was sentenced to a consecutive sentence of life imprisonment for first degree rape.

The court then sentenced appellant to concurrent sentences for the remaining offenses, as follows:

Life for first degree rape and twenty years for burglary in Case Number 39361;

Twenty years for attempted armed robbery and twenty years for burglary in Case Number 39037;

Twenty years for burglary in Case Number 39281;

Twenty years for second degree rape and twenty years for burglary in Case Number 39362;

Twenty years for burglary and fifteen years for assault with intent to rape in Case Number 40129.

█ The aggregate sentence, therefore, was two consecutive life terms and concurrent terms of life plus 155 years.[1]

---

1. Although the sentencing court did not specifically indicate whether these latter nine sentences were to be concurrent, "[t]here is a pre-

### Post-conviction

On April 15, 1997, appellant filed a petition for post conviction relief in all of the aforementioned cases, but withdrew this petition without prejudice on February 26, 1998.[2]

On October 3, 2005, appellant, unrepresented by counsel, filed identical petitions for post-conviction relief in the above six cases. In that petition, appellant alleged that his trial counsel, Paul B. DeWolfe[3] and Ricardo D. Zwaig[4], provided ineffective assistance of counsel on a number of grounds. Appellant also contended that appellate counsel, presumably Assistant Public Defenders Dennis M. Henderson and Mitchell Egber, denied him effective assistance of appellate counsel, also on a number of grounds.

The State filed an opposition to this petition on March 23, 2006, asserting that "[t]he [p]etitioner's allegations should be deemed waived, previously litigated or mere bold-faced [sic] allegations upon which relief can not be granted."

On March 23, 2006, appellant, *pro se*, filed a motion to amend his petition for post-conviction relief in all six cases, again asserting ineffective assistance of both trial and appellate counsel. The State filed its opposition to this amended motion on April 12, 2006, again asserting the claims were waived or without merit.

On December 10, 2007, after the Public Defender's Office entered its appearance on behalf of appellant in this postconviction case, appellant filed a Supplement to Petition for Post Conviction Relief, again in all six cases.

------

sumption that if the court does not specify that a subsequently imposed sentence is to be consecutive to an earlier imposed sentence, the latter is concurrent." *Gatewood v. State,* 158 Md.App. 458, 482, 857 A.2d 590 (2004), *aff'd on other grounds,* 388 Md. 526, 880 A.2d 322 (2005).

2. That petition is not included with the record on appeal.

3. Mr. DeWolfe is currently the Public Defender for the State of Maryland.

4. Ricardo D. Zwaig is now a judge of the District Court of Maryland for Howard County.

In its timely response to appellant's Petition for Post Conviction Relief as Amended and Supplemented, the State first asserted that appellant's petition should be denied on the ground of laches. Specifically, the State argued:

> The crimes committed by Lopez date from the summers of 1984 and 1985. One of Lopez's victims was 74 years old. Two other victims were 81 and 85 years old, respectively. Though Lopez's other two victims were 25 and 41 years old, respectively, when they were assaulted, the crimes against them were committed at least twenty years before Lopez filed his petition in October of 2005. It is hardly farfetched under these circumstances to suggest that the elderly victims are no longer alive and that the memories of the younger victims and other potential witnesses, even if they are still living, will have faded. Such circumstances, in the words of the Court of Appeals in [State v. Adams, 406 Md. 240, 958 A.2d 295 (2008)], "pose[ ] a real potential for serious hardship and prejudice to the State's ability to mount ... new prosecution[s]" were Lopez's convictions set aside either in the instant post conviction proceeding or on appeal were a belated appeal granted.

The State also contended that, even if the claims were not barred by laches, appellant's allegations of error should be deemed waived. Specifically, the State contended that:

> [A]ll of those claims should be treated as waived by virtue of [appellant's] having not raised them at the time of his trial and/or at the time of the guilty plea proceeding and/or at the time of sentencing, as well as by virtue of [appellant's] having waived and/or having not exercised his appellate rights, be they the right to note an appeal as of right or the right to file an application for leave to appeal from the convictions based on his guilty plea.[5]

On December 11, 2008, a hearing was conducted on the petition for post-conviction relief. At that hearing, the pri-

---

**5.** The State also briefly contended that appellant's post conviction claims were also meritless.

mary issue was whether appellant's petition was barred by laches. The State proffered that the State's Attorney no longer had a file on any of the cases. In asking the court to deny the petition under the doctrine of laches, the State noted that, "we've got victims here who I can't imagine are still alive and all of it, given the expiration of time, the lapse of time, memory problems, and issues like that."

Appellant's post-conviction counsel primarily relied on *Creighton v. State*, 87 Md.App. 736, 591 A.2d 561 (1991), where this Court previously held laches did not apply under the then-existing post-conviction statute. Recognizing that the General Assembly had enacted a 10–year statute of limitations in 1995, after *Creighton*, appellant's counsel also noted that the limitation was only imposed prospectively.

During its discussion with the post-conviction court, appellant's counsel also requested, should the court be inclined to dismiss the petition under laches, that appellant be permitted to testify, assisted by sworn interpreters, concerning his reasons for not filing the petition sooner. Specifically, it was proffered, appellant would testify to his attempts to obtain transcripts for purposes of appeal, the cost to reproduce those transcripts, and his attempts at obtaining assistance from the Public Defender.

The court initially indicated, "but I don't know that I, I don't know that I really even need to hear testimony." The court was informed that transcripts of appellant's trial, guilty plea, and sentencing were available.[6] The court stated:

That doesn't change the ultimate issue, the ultimate issue being this was a guilty plea and he was advised as to what was going on and the condition of the plea was that he had, that this was the deal. That he was going to get this sentence and he was going to get this sentence for, in consideration for what had gone down, what had happened in all these other cases and the ongoing investigations. It doesn't change the fact, does it, that he still waited and he

---

6. The record on appeal only includes a portion of the trial transcripts.

waited and he waited and he waited, he didn't file anything until 2005 or 1997 he files and he withdraws it?

After appellant's counsel referred to some of the allegations in the petitions, including, through his interpreter, whether appellant understood the terms of the guilty plea, the court asked the State whether it was necessary to take testimony during the post-conviction hearing. The State initially referred to the merits of its laches argument, and then, considering that all the transcripts were currently available, stated "I can't imagine what his testimony is going to add." After further argument, the State did observe that appellant's trial counsel, Mr. DeWolfe, was "on call."

After hearing further argument from counsel, the court agreed with the State that laches barred appellant's petition. The court first referred to the transcript of the plea hearing, concerning whether appellant knowingly, intelligently and voluntarily waived his right to jury trial, stating:

Now, in this case, in this case with this defendant Mr. Lopez had been through a full blown trial that lasted over four or five days. He had been in trial. He knew what jury selection was because he sat through it with Mr. DeWolfe and Mr. DeWolfe's co-counsel. He knew what it was to cross-examine a witness because he'd seen it done. He knew what a jury deliberation was, he knew what jury instructions were, he knew what opening statements and closing arguments are. He knew what his right to testify or not testify was. He knew what a motion to suppress was. He knew all of those things.

It's ridiculous to think that the attorney that's involved in advising him in this case, who handled the trial in this case, didn't advise him what he was giving up when he was on appeal, what an appeal was. It's just ridiculous. Mr. DeWolfe is the Public Defender for Montgomery County. He's been employed in that capacity, he's tried hundreds of cases, many serious cases, and I've known him for a long time. But for any attorney it's ridiculous to think that when you're involved in a plea of guilty that you're not going to

discuss your, to your, with your client his right to appeal. Whether he fully understands it, whether any client fully understands it that doesn't have a full blown legal education, they certainly seem to as almost immediately after they get into prison, but he had been involved in a full blown trial so he knew what it was.

The court then reviewed the trial transcript, quoting the portions where appellant's trial counsel advised appellant of his right to a jury trial. The court also referred to the sentencing transcript, noting that Mr. DeWolfe asked for a recommendation for appellant to the Patuxent Institution. Noting the seriousness of the underlying crimes, the court commented on the favorable deal afforded to appellant, because "the facts of these cases were so outrageous that the State would have taken the position that they were going to try each and every case they could have in order to put him in jail for as long as possible."

The court next addressed the factual bases of the underlying pleas as we have set them out, *supra*. The court then stated:

And when I look at all of these claims, and I look at when they've been raised in light of the prejudice to the State, it just seems overwhelmingly in favor of, if this isn't a case that should be dismissed for laches, I'm not sure which one—Well, I just think that the court has recognized that there comes a point in time when we have to say that this is just ridiculous. Too much time has gone by. Common sense tells us it doesn't make sense in this case.

In reviewing the cases separately, the court noted that three of the victims—85, 81, and 74 years old at the time of the crimes in 1984 and 1985—were most likely deceased.[7] The court noted that because of the guilty pleas, there is no

---

7. The State pointed out that the sentence in the case of the 85 year old victim was a 20 year concurrent sentence and that "he's probably beyond entitlement to relief on the grounds that the 20 years has, they were concurrent sentences," and that "that sentence would have expired probably before he even filed his petition. . . ."

recorded testimony of any of those three victims. In part, the court observed "[n]ow, if this isn't the time to apply laches and say, sorry, way too much time has gone by and I guess back, well I guess we can say, she would have been only 105 in 2005, I just think it's ludicrous." The State did note that appellant received life sentences on the initial rape convictions.

In addition, while discussing the case of one of the three elderly victims, the court noted, in part:

If this, if that [sic], 104 years old and five months before we even take into account any appeals or anything else, to ask the State to come forward now and do that based on, I told Mr. DeWolfe that he should have, he should take an appeal for me and he didn't. I think if this isn't a situation where laches would apply and where the State should take the time, the Court should take the time to have Mr. Lopez testify with respect to this, again, I just think it's absolutely, totally and completely unfair.

With respect to the two younger victims, who would have been 58 and 64 years old at the time of the hearing, the court continued that, assuming these victims were still alive, healthy, and could be located, there was a transcript for only the trial involving Ms. R., and that both of them would be asked questions concerning their memory of events that occurred 23 years in the past. The court continued:

If members of our community, people, reasonable people with common sense were to hear that the Court had this issue before it and I think they would be shocked to find that somebody could come back and say, wait a second, I want you to throw out my convictions, even though I had two attorneys at the time. I freely and voluntarily waived all my rights on the record. I had gone through one full blown trial and was facing three consecutive lifes [sic] plus all kinds of additional years and I, for the reasons that I've indicated in my petition, want new trials, want my cases thrown out and want new trials when one of the victims would be 108, one 104 and one 98, they just wouldn't believe that the Court would, you know, there would be a valid legal

reason to consider something this old. It defies common sense. And I don't think the law should defy common sense, should completely defy common sense.

After noting the chronology in this case, the court additionally stated:

Forgetting all the waiver issues and everything else that are involved, there is, it seems to me when we look at this equitable doctrine, what would be fair and what would be absolutely, totally unfair to grant him the relief he requests after this length of time to go by based on the facts of these cases. Based on the facts of these cases where we have victims, at least two that would now on this very day be over 100 years old, well over 100 years old assuming they were alive, and in all probability are now passed away. The probabilities are that all of the victims in this case, excuse me, that all of the elderly victims in this case are now deceased.

After a question from appellant's counsel seeking clarification of the court's ruling, the court made clear that it was denying the petition on the grounds of laches.

No, no, no, I'm trying, I'm glad you did. Because I'm trying to frame it for them so that they can take a look and see, sorry, there is no such thing as a case where laches applies. And I think they need to take a look at the issue, because I think there has to be some finality in these cases. And I think in this case if you look at what the State, what the State's position would be after all these years and the reasons for the relief requested, that's what I'm talking about, the reasons for the relief requested, would they outweigh the unfairness to the State. And I just don't think they, looking at them even on their, just on the allegations as they're raised, not examining them, not going by, not going through them, not considering waiver, not considering but just I have to, I think, take an overall look at the allegations if I'm talking about fairness and to see what they are and what their basis is. And in looking at that and in looking at the unfairness to the State and the unfairness to

the victims of these crimes after guilty pleas at least in four of them, two of which carry life sentences that he served, one of them being the consecutive life sentence, I think that that's what I'm doing in this case.

Counsel then inquired whether the court was ruling that appellant could not testify, and the court agreed that was its ruling, stating, "well, the record is what the record is." On this last point, the following colloquy occurred between the court and appellant's counsel at the hearing:

[COUNSEL]: I just wanted to be clear that Mr. Lopez is not being allowed to testify as to his reasons for why his petition was filed in 1995. I want that to be clear on the record.

THE COURT: And they may say that was a fatal flaw applying laches that I should have let him testify and give all his reasons. But in looking at the allegations—

[COUNSEL]: Okay.

THE COURT:—and in looking at the basis of the allegations, I'm considering those reasons. You see what I'm saying?

[COUNSEL]: Well, he wasn't able to testify so I don't think the Court was, but I just want to make it clear on the record so, for purposes of appeal.

THE COURT: No, it's clear he hasn't testified and it's clear—

[COUNSEL]: Okay.

THE COURT:—that you wanted to call him.

[COUNSEL]: Okay, thank you, Your Honor.

THE COURT: At least I think it's clear.

[COUNSEL]: Thank you, Your Honor.

THE COURT: But I don't have no problem with you making it even more clear.

[COUNSEL]: Thank you, Your Honor.

THE COURT: Because I'm easily confused anyway but I, you know, I just, I just think it's something that they have, I don't want to say been dancing around but I do believe

that there has got to be a point at which we say we're not going to inquire into all these reasons based on these allegations. And the reasons we're not is because so much time has passed, forgetting the reasons why and all the problems and all the excuses, so much time has passed that even considering whatever those reasons may have been, to have a hearing to consider all those reasons it seems, it's just too much time has passed and something should have been done before then because the outcome would be so unfair that is to force the State to start all over again in these cases where he's pled guilty that, you know, that's the issue and they may say, so be it. If that's what happens, that's what happens.

Thereafter, on January 14, 2009, the court incorporated a transcript of the hearing and denied appellant's petition for post-conviction relief in a written order. Appellant timely filed an application for leave to appeal, which was granted by this Court on June 9, 2010.

## DISCUSSION

The sole issue on this appeal is whether the post conviction court erred in denying appellant's petition on the grounds of laches.

Maryland's Uniform Postconviction Procedure Act, Maryland Code (2001, 2008 Repl.Vol.), §§ 7–101 to 7–301 of the Criminal Procedure Article ("C.P."), provides for and regulates the post-conviction proceedings of certain persons who have been convicted of crimes. Maryland Rules 4–401 through 4–408 govern post-conviction procedure. On appellate review of a decision by a post-conviction court, we " 'will not disturb the factual findings of the post-conviction court unless they are clearly erroneous.' " *Arrington v. State*, 411 Md. 524, 551, 983 A.2d 1071 (2009) (quoting *Wilson v. State*, 363 Md. 333, 348, 768 A.2d 675 (2001)). We make our own independent determination of relevant law and its application to the facts. *State v. Adams*, 406 Md. 240, 255, 958 A.2d 295 (2008) (citing

*Gray v. State,* 388 Md. 366, 375, 879 A.2d 1064 (2005)), *cert. denied,* 556 U.S. 1133 (2009).

## I. Laches and the Postconviction Act in cases where sentence was imposed prior to October 1, 1995.

Ultimately in this case, we are concerned with an interpretation of C.P. § 7–103, which provides:

(a) Only one petition allowed.—For each trial or sentence, a person may file only one petition for relief under this title.

(b) 10–year filing period.—

(1) Unless extraordinary cause is shown, in a case in which a sentence of death has not been imposed, a petition under this subtitle may not be filed more than 10 years after the sentence was imposed.

The rules governing statutory interpretation are well established. The Court of Appeals has provided:

In statutory interpretation, our primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " Further, whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences. If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. If however, the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose.

*Barbre v. Pope,* 402 Md. 157, 172–73, 935 A.2d 699 (2007) (internal citations omitted).

If we could limit our review to the plain language of C.P. § 7–103, our analysis would be brief. The plain language of

C.P. § 7–103 does not permit appellant's petition in this case. Simply put, his petition, first filed on October 3, 2005 was filed more than ten years after his 1986 sentences. Indeed, even his original petition, later withdrawn without prejudice, was filed in April 1997, beyond the 10 year limitation.

■ Nevertheless, our analysis takes us beyond plain language. C.P. § 7–103 is a more recent statute, enacted in 1995, after appellant was sentenced, and is prospective only in application. *See State v. Williamson,* 408 Md. 269, 275, 969 A.2d 300 (2009). Thus, we must consider whether the General Assembly intended that petitions filed with respect to convictions in which a sentence was imposed prior to October 1, 1995, could be barred under the doctrine of laches.

We begin our analysis by observing that the Post Conviction Act is derived from the common law:

> In 1958 the General Assembly enacted the Post Conviction Procedure Act, Ch. 44 of the Acts of 1958, Code (1957, 1963 Cum.Supp.), Art. 27, § 645A et seq. That enactment, for the first time, created a statutory remedy under which a prisoner could collaterally challenge the conviction and sentence, or defective delinquency determination, which led to his incarceration. The Post Conviction Procedure Act also provided that any party aggrieved by the final trial court order in a proceeding under that Act could file an application for leave to appeal. Code (1957, 1963 Cum.Supp.), Art. 27, § 645–I. The purpose of the Post Conviction Procedure Act was to create a simple statutory procedure, in place of the common law habeas corpus and coram nobis remedies, for collateral attacks upon criminal convictions and sentences. Although for constitutional reasons the General Assembly did not restrict the authority of judges to issue writs of habeas corpus, [ ]it did in the Post Conviction Procedure Act legislate with regard to appeals in habeas corpus cases.

*Gluckstern v. Sutton,* 319 Md. 634, 658, 574 A.2d 898, *cert. denied, sub nom. Henneberry v. Sutton,* 498 U.S. 950, 111

S.Ct. 369, 112 L.Ed.2d 331 (1990) (internal citations and footnote omitted).

With this background in mind, we also set forth the law with respect to the doctrine of laches. Recently, in *Moguel v. State*, 184 Md.App. 465, 966 A.2d 963 (2009), this Court held that the equitable doctrine of laches applied in *coram nobis* cases. We stated, that:

> "Generally, . . . [laches] must be pled, but it can be invoked by a court on its own initiative." *Liddy v. Lamone*, 398 Md. 233, 242, 919 A.2d 1276, 1282 (2007). "[T]here is no inflexible rule as to what constitutes, or what does not constitute, laches; hence its existence must be determined by the facts and circumstances of each case." *Liddy*, 398 Md. at 244, 919 A.2d at 1283 (quoting *Ross v. State Board of Elections*, 387 Md. 649, 669, 876 A.2d 692, 704 (2005)). The passage of time alone does not render an action barred by laches. *See Brashears v. Collison*, 207 Md. 339, 115 A.2d 289 (1955). Further, "[i]t is . . . well settled that laches 'applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party.'" *Liddy*, 398 Md. at 244, 919 A.2d at 1283 (quoting *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76, 117, 756 A.2d 963, 985 (2000)). "There must have been some lapse of time during which the plaintiff failed to assert his rights, and the lapse must have caused some prejudice to the defendant." *Hungerford v. Hungerford*, 223 Md. 316, 321, 164 A.2d 518, 521 (1960). "Prejudice is 'generally held to be any thing that places [the defendant] in a less favorable position.'" *Liddy*, 398 Md. at 244–245, 919 A.2d at 1284 (alteration in original) (quoting *Ross v. State Board of Elections*, 387 Md. at 670, 876 A.2d at 704).

*Moguel*, 184 Md.App. at 475–76, 966 A.2d 963; *see also Liddy v. Lamone*, 398 Md. at 245, 919 A.2d 1276 ("[I]n reviewing the Circuit Court's decision, the issue of laches, in this case, is a mixed question of fact and law").

We also take into account the State's argument that "Lopez's action for post-conviction relief was not a part of his

criminal cases, but is an independent and collateral civil proceeding." *See Maryland State Bar Assoc. v. Kerr,* 272 Md. 687, 689–90, 326 A.2d 180 (1974) (stating that post-conviction proceedings in Maryland do "not constitute a part of the original criminal cause, but is an independent and collateral civil inquiry into the validity of the conviction and sentence"); *accord State v. Matthews,* 415 Md. 286, 308, 999 A.2d 1050 (2010); *Arrington v. State,* 411 Md. at 563, 983 A.2d 1071; *Mosley v. State,* 378 Md. 548, 559–560, 836 A.2d 678 (2003); *State v. Kanaras,* 357 Md. 170, 183, 742 A.2d 508 (1999); *Ruby v. State,* 353 Md. 100, 107, 724 A.2d 673 (1999); *see also Trimble v. State,* 157 Md.App. 73, 78, 849 A.2d 83 (2004) ("As the [Supreme] Court has explained, postconviction relief 'is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. . . . It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. States have no obligation to provide this avenue of relief,' " quoting *Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)); *State v. Bundy,* 52 Md.App. 456, 459 n. 2, 450 A.2d 495 (1982) ("Because a post conviction proceeding is deemed to be civil in nature, the channels of review may be different from those provided for ordinary criminal cases. (*See Standards for Criminal Justice,* Post Conviction Remedies, § 22–5.1, Commentary [1980] )[.] In Maryland, the rules relating to civil proceedings are applicable to post conviction proceedings").

The State also observes that in *Liddy v. Lamone,* the Court of Appeals stated that: "[l]aches is one of the affirmative defenses recognized and expressly listed in Md. Rule 2–323." *Liddy v. Lamone,* 398 Md. at 242, 919 A.2d 1276.[8] Thus, the

---

8. Maryland Rule 2–323(g) provides: "Affirmative defenses. Whether proceeding under section (c) or section (d) of this Rule, a party shall set forth by separate defenses: (1) accord and satisfaction, (2) merger of a claim by arbitration into an award, (3) assumption of risk, (4) collateral estoppel as a defense to a claim, (5) contributory negligence, (6) duress, (7) estoppel, (8) fraud, (9) illegality, (10) *laches,* (11) payment, (12) release, (13) res judicata, (14) statute of frauds, (15) statute of limita-

State's position is that, because post-conviction cases are civil in nature, the equitable remedy of laches should be available in applicable circumstances.

## A. *Laches and the Postconviction Act prior to 1995.*

In *Creighton v. State,* 87 Md.App. 736, 591 A.2d 561 (1991), this Court had occasion to consider whether the doctrine of laches applied to post-conviction cases. Creighton filed his petition 26 years after he had been convicted of first degree murder. *Creighton,* 87 Md.App. at 737, 591 A.2d 561. The petition asserted two grounds for relief: (1) that certain errors at his trial required a new trial; and, (2) that his attorney failed to perfect an appeal, requiring a belated appeal. *Id.* Following an evidentiary hearing, the post-conviction court denied relief on two grounds: (1) the petitioner's allegations were effectively rebutted by the State; and, (2) the petition was barred under the doctrine of laches. *Id.* at 739–40, 591 A.2d 561.

While ultimately denying the application for leave to appeal on grounds that are not relevant to our discussion in this case, *Creighton,* 87 Md.App. at 746–48, 591 A.2d 561, this Court disagreed with the post-conviction court's findings. Observing that petitioner's attorney did file a notice of appeal, this Court indicated that there was "a fair inference that the appeal was dismissed because [the petitioner's attorney], who filed it, failed to perfect it." *Id.* at 740, 591 A.2d 561.

Next, we considered the post-conviction court's ruling that the petition was barred by laches, and concluded that the doctrine was not permitted under the then-existing post-conviction statute. After recognizing that a specific rule concerning the comparable federal statute on collateral relief expressly allowed dismissal of such petitions on the grounds of laches, *see Creighton,* 87 Md.App. at 742–43, 591 A.2d 561, we stated:

---

tions, (16) ultra vires, (17) usury, (18) waiver, (19) privilege, and (20) total or partial charitable immunity." (Emphasis added).

There is, unquestionably, an element of fairness, of equity, in applying a laches-type doctrine in these cases. It is not right for a prisoner to sit back and wait for memories to fade, for records to disappear, for crucial witnesses to die or otherwise become unavailable to rebut allegations of incompetence or procedural irregularity before filing his or her petition. Were we free to do so, we would follow Virginia and South Carolina and do decisionally what Congress has done for the Federal courts. Our problem is that the statute—the Post Conviction Procedure Act—does not seem to allow it. We glean that from four provisions in the statute—all in § 645A of Art. 27.

*Creighton,* 87 Md.App. at 744, 591 A.2d 561.

After citing the restriction in former Art. 27, § 645A(a)(1) that any person may file a petition alleging error, provided the claim had not been finally litigated or waived in the underlying proceedings, we observed that:

[a]part from the limitation in subsection [645A(a)(2) ] that not more than two petitions arising from each trial may be filed, those appear to be the only restrictions on the ability to proceed under the Act—that the claim has not been finally litigated or waived in the manner noted.

*Creighton,* 87 Md.App. at 744–45, 591 A.2d 561.

We also considered three other provisions of Art. 27 § 645A: subsections (c), (d), and (e). Subsection (c) listed a number of instances when an allegation shall be deemed waived. We observed that "[t]he failure to file a petition more promptly—even where prejudice ensues—is not one of the listed circumstances" in that subsection. *Creighton,* 87 Md. App. at 745, 591 A.2d 561. We also set forth subsection (d), concerning retrospective application of a new constitutional procedural or substantive standard decided by a higher appellate court subsequent to any decision on the merits. We noted that this subsection appeared to be the only one in § 645A expressly recognizing the possibility of a long delay in filing a petition. *Creighton,* 87 Md.App. at 745, 591 A.2d 561. Finally, we observed that subsection (e) provided that "[a]

petition for relief under this subtitle may be filed at any time . . . ." *Creighton*, 87 Md.App. at 746, 591 A.2d 561. We concluded:

Subsection (e) would seem to negate any notion of claim preclusion—a disentitlement from proceeding at all under the Act because of delay. Subsections (a), (c), and (d) focus more on the question of issue preclusion, to which laches is particularly relevant, and seem to negate that as well. Even without these rather formidable barriers, Congress saw the need to provide express authority for the Federal courts to use the doctrine in this context. Absent such clear legislative direction, we can find no warrant under the current Maryland law for our doing so. Denial of the petition on the ground of laches was therefore error.

*Creighton*, 87 Md.App. at 746, 591 A.2d 561.

Two years after this Court decided *Creighton*, the Court of Appeals, in *Fairbanks v. State*, 331 Md. 482, 629 A.2d 63 (1993), left open the possibility that laches would apply in post conviction proceedings. There, the petitioner was subject to enhanced penalties as a repeat offender. *Fairbanks*, 331 Md. at 484, 629 A.2d 63. His argument was that the predicate for the enhanced penalty, a 1972 conviction, was infirm because there was no showing that he intelligently waived his right to trial by jury in that prior case. *Id.* The Court of Appeals ultimately agreed with the State's argument that the defendant could not collaterally challenge the 1972 conviction at his sentencing in the subsequent case. *Id.* The Court stated that "[a]llowing a defendant to mount any constitutionally based challenge to a predicate conviction at a recidivist (or other) [ ] sentencing proceeding would present significant procedural difficulties." *Id.* at 486, 629 A.2d 63 (footnote omitted).

The Court continued:

A defendant who is prevented from challenging the constitutionality of a prior conviction at trial or during a sentencing proceeding is not thereby divested of an opportunity for relief. That defendant may thereafter mount a collateral challenge by any means that remain available, [n.

3] including post-conviction procedures, habeas corpus, error *coram nobis,* or other statutory or common law remedies. If successful, the defendant may possibly then challenge the conviction or sentence affected by the use of the constitutionally infirm conviction. [n. 4]

*Fairbanks,* 331 Md. at 492–93, 629 A.2d 63.

In footnote 3 to this quote, the Court elaborated:

A defendant may or may not be able to bring a collateral attack. Post-conviction and habeas corpus remedies are available only if the defendant is in custody or subject to conditions of parole or probation. *McMannis v. State,* 311 Md. 534, 539–47, 536 A.2d 652 (1988). As previously noted, our statute prohibits more than two post-conviction petitions arising out of a single trial. Article 27, § 645A(a)(2). The writ of error· *coram nobis,* addressed to the court that entered judgment, may be available to the defendant who is no longer in custody. Moreover, a defendant able to mount a collateral challenge may be barred by waiver, see *Curtis v. State,* 284 Md. 132, 395 A.2d 464 (1978), *or might be barred by laches, see Oliver v. U.S.,* 961 F.2d 1339, 1342–43 (7th Cir.), *cert. denied,* [506 U.S. 976], 113 S.Ct. 469, 121 L.Ed.2d 376 (1992).

*Fairbanks,* 331 Md. at 492 n. 3, 629 A.2d 63 (emphasis added).

### B. *Gleaning legislative intent from the 1995 Amendments to the Postconviction Act.*

Subsequent to both *Creighton* and *Fairbanks,* and as explained in more detail by the Court of Appeals in both *Grayson v. State,* 354 Md. 1, 728 A.2d 1280 (1999), and *State v. Williamson,* 408 Md. 269, 969 A.2d 300 (2009), the General Assembly, in 1995, addressed the issue of the number of, and the time frame for filing, petitions for post-conviction relief.[9]

---

9. In *Grayson,* the Court agreed that 1995 Md. Laws ch. 110 barred the filing of a new petition after September 30, 1995, if the petitioner had filed one or more petitions prior to that date. *Grayson,* 354 Md. at 9, 728 A.2d 1280. Further, the act would not bar a second petition if it was filed prior to September 30, 1995. *Id.* at 13, 728 A.2d 1280.

Two bills were before the General Assembly. Senate Bill 340, 1995 Md. Laws, ch. 110 (signed on April 11, 1995, effective October 1, 1995), amended § 645A(a)(2) by limiting individuals to filing one petition. This bill also permitted reopening a petition, in the court's discretion, if it is "in the interests of justice." House Bill 409, 1995 Md. Laws, ch. 258 (signed May 9, 1995, effective October 1, 1995), permitted individuals to file no more than two petitions, but required that a petition filed under the subtitle be filed not later than 10 years from the imposition of sentence.[10] Pertinent to the limitations period, and as made clear by *Williamson*, § 2 of 1995 Md. Laws, ch. 258, provided:

That this Act shall be construed prospectively to apply only to post-conviction proceedings for sentences imposed on or after the effective date of this Act and may not be applied or interpreted to have any effect on or application to post-conviction petitions for sentences imposed before the effective date of this Act.

1995 Md. Laws, ch. 258 § 2.

As the *Williamson* Court held:

Sections 1 and 2 are clear, unlike what the State asserts. [ ] Section 1 provides a period of 10 years from the imposition of sentence within which to file a post conviction petition and Section 2 admonishes that prospective imple-

---

**10.** With respect to the number of petitions, the final iteration of the statute included in the 1995 Supplement to Article 27 provided that only one petition may be filed:

(2)(i) A person may file only one petition, arising out of each trial, for relief under this subtitle.

(ii) Unless extraordinary cause is shown, in a case in which a sentence of death has not been imposed, a petition under this subtitle may not be filed later than 10 years from the imposition of sentence.

(iii) The court may in its discretion reopen a postconviction proceeding that was previously concluded if the court determines that such action is in the interests of justice.

Md.Code (1957, 1992 Repl.Vol., 1995 Supp.), Art. 27, § 645A.

In addition, Section 2 of the Senate Bill provides that the one petition limit is to apply retroactively to all persons regardless of when the offense was committed or when the trial or sentencing was held. 1995 Md. Laws, ch. 110, § 2.

mentation is mandated—that the 10–year limitation "shall be construed prospectively," that it "apply only to post conviction proceedings for sentences imposed on or after the effective date of the Act" and that it "may not be applied or interpreted to have any effect on or application to post conviction petitions for sentences imposed before the effective date of the Act."

*Williamson*, 408 Md. at 275, 969 A.2d 300 (footnote omitted).

Thus, as we indicated in the outset of our discussion, *Williamson* and the statute make clear that appellant's petition is not time barred under current C.P. § 7–103(b).[11] That leaves us with the need to glean the intent of the Legislature with respect to petitions challenging convictions where sentencing occurred prior to the effective date of the 1995 amendment, *i.e.*, October 1, 1995, such as appellant's 1986 convictions and sentences in this case.

The legislative history of both the House and Senate bills demonstrate that, when it amended the Postconviction Act in 1995, the General Assembly was aware of this Court's opinion in *Creighton*. In the Bill Analysis from the Senate Judicial Proceedings Committee for House Bill 409, the following background was provided:

Under current law, a person's right to petition for post-conviction relief is not restricted by inaction, regardless of the length of time that passes following conviction. *See* Article 27 § 645A of the Code.

Other states (e.g., Virginia) have applied the equitable doctrine of laches to preclude post-conviction relief for cases in which the filing of a petition is so long-delayed that the state's defense of the claim would be prejudiced. The doctrine of laches, however, has been held not to apply to the State's postconviction relief law. *See Creighton v. State,* 87 Md.App. 736, 744, 591 A.2d 561 (1991).

---

**11.** C.P. § 7–103 is prospective and thus has no application to the present case.

While the General Assembly recognized our decision in *Creighton* in its analysis, it is notable that the analysis does not indicate that laches is entirely unavailable. Instead, the language in the analysis is qualified, noting only that this Court had previously held that the doctrine did not apply in post-conviction cases. Further, letters and testimony in support of both the House and Senate Bills express reservations about delay and stale petitions, issues which arguably concern the doctrine of laches.

Concern for delay and stale petitions was expressed by then Attorney General, J. Joseph Curran, Jr., in a letter to the House Judiciary Committee:

> While I believe that it is important to retain the right to collateral review of criminal convictions through the post conviction process, I am concerned that stale petitions and prolonged delays increase the costs and undermine public confidence in the criminal justice system. If post conviction relief were to be granted several years after the commission of a crime, the victim and victim's family would understandably be concerned and the prosecution of the case might be impaired due to problems in proving a case where the crime occurred many years before.

Letter from Attorney General Curran to Hon. Joseph F. Vallario, Jr., Chairman, House Judiciary Committee, regarding House Bill 409 (March 3, 1995).

In addition, Robert L. Dean, then Senior Assistant State's Attorney for Montgomery County, Maryland, wrote a memorandum on the subject to the House Judiciary Committee, observing that "[t]here is a clear increase in the number of 'stale' post-conviction petitions filed and I sense from my fellow prosecutors around the state that this is a state-wide concern." Memorandum from Robert L. Dean to Members of the House Judiciary Committee (March 7, 1995). In his memorandum, Dean recounts ten pending post-conviction cases, the oldest relating to a 1971 murder/rape conviction, and many of which date from the early 1980's. The memorandum concludes as follows:

The expense and time in reconstructing old cases is considerable. Most of these cases (certainly not all) are an attack on the quality of defendant's representation. It is a difficult if not impossible task to get counsel to refresh their memories of decisions and tactics made years before. The quality of the evidentiary hearings suffers as a result. . . .

Memorandum from Robert Dean to House Judiciary Committee, p. 3.

Then, after quoting the same passage from *Creighton* that we have set forth above, *see Creighton,* 87 Md.App. at 744, 591 A.2d 561, Dean concluded:

Furthermore, imagine the victim's reaction to a call from the prosecutor's office years (5, 10, 15, 20, 25 years) after trial that the case is reopened! There is *no* satisfactory explanation to a victim or the surviving family to this lack of finality other than legislative oversight.

We don't seek to eliminate post conviction relief—only to require that it be sought in a timely and reasonable manner. This can only enhance the fact finding process and the quality of review and ultimately the quality of justice.

Memorandum from Robert Dean to House Judiciary Committee, p. 3. (emphasis in original).

There was also testimony before the Senate Judicial Proceedings Committee on Senate Bill 340 from Gary E. Bair,[12] Chair of the Governor's Commission on the Death Penalty, and Chief of the Criminal Appeals Division for the Office of the Attorney General. With respect to the amendment limiting post-conviction petitions from two to one, Chairman Bair testified as follows:

This amendment would reduce the number of postconviction petitions from two to one, but would permit a court to reopen a previously concluded proceeding if necessary to avoid a miscarriage of justice. This balances the need for procedural safeguards with the need for stemming cost and delay. There simply is no need for routine second peti-

---

12. Gary E. Bair is now an Associate Judge of the Circuit Court for Montgomery County.

tions—counsel can and should put all claims into a first petition. At the federal level, a defendant gets only one habeas corpus petition; he should not get more than one post conviction petition.

Testimony from Chairman Bair, Governor's Commission on the Death Penalty, before the Senate Judicial Proceedings Committee (February 22, 1995).

### C. *Other authority concerning laches and post conviction relief.*

At minimum, the legislative history expresses a concern about the unfairness that could result if stale petitions were permitted. In addition to this history, the Court of Appeals also expressed concern about unreasonable delay in *State v. Adams, supra.* The Court denied post-conviction relief because the defendant waived his complaint of prejudicial trial error. *Adams,* 406 Md. at 261–66, 958 A.2d 295. Addressing Adams's argument that the Court should excuse this waiver, the Court noted the unfairness the delay had caused the State:

> A delay of twenty-four years before asserting his waived arguments (which were based on two cases decided in 1980 and 1981, respectively) may be a testimonial to patience, but the delay poses a real potential for serious hardship and prejudice to the State's ability to mount a new prosecution. This delay is particularly inexcusable because "[a]s originally enacted in 1958, the [Post–Conviction Procedure] Act did not place any limit on the number of post conviction petitions which a petitioner was entitled to file." *Mason v. State,* 309 Md. 215, 217–18, 522 A.2d 1344, 1345 (1987).

*Adams,* 406 Md. at 283–84, 958 A.2d 295.[13]

Moreover, a number of other courts have concluded that laches applies to post-conviction proceedings. In *Raso v. Wall,* 884 A.2d 391 (R.I.2005), on September 19, 1973, Raso pleaded guilty to kidnapping and accessory before the fact to

---

**13.** The Court also cited *Creighton's* passage, quoted *supra,* that allowing a prisoner to wait many years before filing a petition is unfair to the prosecution. *Adams,* 406 Md. at 284, 958 A.2d 295 (quoting *Creighton,* 87 Md.App. at 744, 591 A.2d 561). Moreover, we suggest that the

rape, sodomy, and robbery. *Raso,* 884 A.2d at 392. When he appeared for sentencing on November 28, 1973, Raso sought to withdraw his guilty plea. The court denied the motion. *Raso,* 884 A.2d at 392–93.

In 2001, 28 years later, Raso filed an application for postconviction relief under the Rhode Island statute. *Raso,* 884 A.2d at 393. Raso contended that the sentencing judge abused her discretion by not permitting him to withdraw his guilty plea prior to sentencing. *Id.* Following a hearing in 2003, the Superior Court denied Raso's application, holding that there was no basis to find that the sentencing court acted improperly. *Id.* The court declined to consider the State's assertion of the defense of laches. *Id.*

On appeal, the Supreme Court of Rhode Island held that laches "may, in appropriate circumstances, be properly invoked by the state as an affirmative defense to an applicant's application for postconviction relief." *Raso,* 884 A.2d at 394. Recognizing that the Rhode Island statute provided that "[a]n application [for postconviction relief] may be filed at any time," the Court stated:

> Although on its face, this language provides that there is no statutory limitation on the time in which an applicant may file an application for postconviction relief, the existence of such language does not preclude the application of the doctrine of laches. In our judgment, it would be absurd to read "at any time" as constituting a limitless "Open Sesame" in which an applicant could file an application for postconviction relief at literally *any* time without weight being given to the possible prejudice to the state wrought by the passage of time. Accordingly, we construe the statutory term as meaning at any *reasonable* time.

*Raso,* 884 A.2d at 395 (emphasis in original).

Other jurisdictions have similarly concluded that the affirmative defense of laches may apply in post-conviction proceed-

---

Court's observations in *Adams,* and the legislative action subsequent to our decision in *Creighton,* cast serious doubt on the continued precedential value of *Creighton.*

ings. *See Oliver v. United States,* 961 F.2d 1339, 1342–43 (laches barred claim under then existing federal post-conviction statute made seventeen years after guilty plea), *cert. denied,* 506 U.S. 976, 113 S.Ct. 469, 121 L.Ed.2d 376 (1992); *Robbins v. People,* 107 P.3d 384, 390 (Colo.2005) (holding that enactment of a statute that provides no time limit for the filing of post-conviction petitions did not abrogate the common law defense of laches), *cert. denied,* 546 U.S. 853, 126 S.Ct. 117, 163 L.Ed.2d 126 (2005); *Wright v. State,* 711 So.2d 66, 67–68 (Fla.Dist.Ct.App.1998) (laches barred post-conviction claim brought 24 years after sentencing); *People v. Rodriguez,* 402 Ill.App.3d 932, 342 Ill.Dec. 222, 932 N.E.2d 113, 123 (2010) (recognizing that laches may bar a post-conviction claim, but declining to apply the doctrine in this case), *appeal denied,* 238 Ill.2d 668, 347 Ill.Dec. 257, 942 N.E.2d 460 (2010); *Gregory v. State,* 463 N.E.2d 464, 465 (Ind.1984) (recognizing the affirmative defense of laches in post-conviction, but reversing because trial court ruled it was defendant's burden to disprove laches); *Brewer v. State,* 446 N.W.2d 803, 805–06 (Iowa 1989) (concluding laches is available in a post-conviction case, provided certain preliminary procedures, such as notice requirements, are followed); *Johnson v. State,* 714 N.W.2d 832, 837–38 (N.D.2006) (although post-conviction statute provided that petitions may be filed at any time, petitions also may be denied under the laches doctrine if they are untimely and the State has been prejudiced); *Paxton v. State,* 903 P.2d 325, 327–28 (Okla.Crim.App.1995) (holding that 30–year delay in filing for post-conviction relief was barred by laches); *Whitehead v. State,* 352 S.C. 215, 574 S.E.2d 200, 202 (2002) (holding that laches may be raised as an affirmative defense in a post-conviction case, but that State waived defense); *cf. Walker v. Mitchell,* 224 Va. 568, 299 S.E.2d 698, 703 (1983) (concluding that a petition for habeas corpus alleging ineffective assistance of counsel may be barred if it is so long delayed that the Commonwealth is prejudiced); *State ex rel. Coleman, v. McCaughtry, Warden,* 290 Wis.2d 352, 714 N.W.2d 900, 901 (2006) (agreeing that laches may bar a habeas corpus action alleging ineffective assistance of counsel, but remanding so the

circuit court can determine whether the State was prejudiced by appellant's 18-year delay in seeking relief).

However, other courts have concluded that laches does not apply in post-conviction cases. *See Commonwealth v. Weddington*, 514 Pa. 46, 522 A.2d 1050, 1052 (1987) (where statute provided that post-conviction petitions may be considered at any time, laches would not bar relief); *Turner v. Maass*, 113 Or.App. 70, 831 P.2d 703, 704 (1992) (holding that, where post-conviction statute expressly permits filing a petition at any time, laches does not apply), *review denied*, 314 Or. 176, 836 P.2d 1345 (1992); *Wills v. State*, 859 S.W.2d 308, 310 (Tenn. 1993) (holding laches did not bar post-conviction claim asserting that petitioner's guilty plea was constitutionally infirm); *In re Stewart*, 140 Vt. 351, 438 A.2d 1106, 1110 (1981) (declining to apply laches where post-conviction statute provided that a petition may be filed at any time); *cf. In re McNair*, 189 Mont. 321, 615 P.2d 916, 917–20 (1980) (holding that while laches does not apply in post-conviction, because laches does apply to motions to withdraw a guilty plea, petitioner's motion was denied).

It is possible to conceive proceedings under the Postconviction Act as a mixture of law and equity. *See Bowie v. State*, 234 Md. 585, 593, 200 A.2d 557 (1964) ("The attack now being made under the Post Conviction Procedure Act on the judgment and sentence is a collateral attack, as an attack on habeas corpus would be, and the same principles apply as in habeas corpus"); *Gluckstern*, 319 Md. at 658, 574 A.2d 898 (observing that the Postconviction Act was enacted in place of the common law habeas corpus and coram nobis remedies); *Creighton*, 87 Md.App. at 743, 591 A.2d 561 ("habeas corpus has traditionally been regarded as governed by equitable principles") (citation omitted). Therefore, as there are equitable principles that may be involved in a collateral civil attack on an underlying conviction, laches arguably should be available as an affirmative defense. This Court has stated that "despite the merger of law and equity, the doctrine of laches is very much alive, and that statutes of limitation serve, generally, as a guideline to the application of laches, rather than as a

complete abrogation of the doctrine." *LaSalle Bank, N.A., v. Reeves,* 173 Md.App. 392, 407, 919 A.2d 738, *cert. denied,* 400 Md. 649, 929 A.2d 891 (2007) (citations omitted).

■ Considering the aforementioned authorities, we are persuaded that laches applies in post-conviction proceedings in Maryland. In contrast to the state of the law when *Creighton* was decided, the General Assembly has now made clear that post-conviction cases are subject to certain time restraints. While the statute does not specifically prescribe a time limit to cases where the sentence was imposed prior to October 1, 1995, we cannot conclude that the General Assembly intended only to limit the filing of petitions by individuals convicted and sentenced after that date. We reach this conclusion guided by the principle that, in construing legislative intent, the goal is to approach a statute from a "commonsensical" perspective, avoiding "giving the statute a strained interpretation or one that reaches an absurd result." *Richmond v. State,* 326 Md. 257, 262, 604 A.2d 483 (1992); *see also Barbre v. Pope,* 402 Md. at 172, 935 A.2d 699 ("whenever possible, an interpretation should be given to the statutory provisions which does not lead to absurd consequences").

## II. The State's burden of proving the affirmative defense of laches by a preponderance of the evidence.

Having concluded that the defense of laches is available to the State in this case, we consider the State's burden of proof.

Appellant argues in the alternative that a remand is necessary because the post-conviction court erred in not conducting an evidentiary hearing. The State's response to this contention in this Court is simply the broad assertion that the post-conviction court properly exercised its discretion.

■ While "there is no inflexible rule as to what constitutes laches," and the defense "must be determined on the facts and circumstances peculiar to each case," *LaSalle Bank,* 173 Md.App. at 409, 919 A.2d 738, the general procedure for evaluating the affirmative defense of laches is two-fold. First, there must be an unreasonable or impermissible delay in

asserting a particular claim. Second, that delay must prejudice the party invoking the defense. *See Liddy v. Lamone*, 398 Md. at 244, 919 A.2d 1276 ("It is, however, well settled that laches 'applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party' "); *Ross v. State Bd. of Elections*, 387 Md. at 670, 876 A.2d 692 ("there must be both an inexcusable delay and prejudice"); *Schaeffer v. Anne Arundel County*, 338 Md. 75, 83, 656 A.2d 751 (1995) ("even where such impermissible delay is present under the circumstances presented, if the delay has not prejudiced the party asserting the defense, it will not bar the equitable action").

The Rhode Island case discussed above, *Raso v. Wall*, discussed how courts should consider the affirmative defense of laches in a post-conviction case:

> This Court has held that the defense of laches requires a showing of "negligence to assert a known right, seasonably coupled with prejudice to an adverse party." *Rodriques v. Santos*, 466 A.2d 306, 311 (R.I.1983).
>
> In those jurisdictions that have permitted the invocation of the doctrine of laches to bar a long-delayed application for postconviction relief, it has been held that the state has the burden of proving by a preponderance of the evidence that the applicant unreasonably delayed in seeking relief and that the state is prejudiced by the delay.[ ] *See, e.g., Wright*, 711 So.2d at 67 ("Laches is sustainable in a criminal case where there has been a lack of due diligence on the part of the defendant in bringing forth the claim and prejudice to the State."); *Walker*, 769 N.E.2d at 1167 ("To succeed, the State must prove by a preponderance of the evidence that the [applicant] unreasonably delayed in seeking relief and that the State was prejudiced by the delay."); *see also Oliver v. United States*, 961 F.2d 1339, 1342 (7th Cir.1992) ("This doctrine [of laches] requires more than mere delay—the [applicant's] delay must be inexcusable as well as prejudicial to the government."). We adopt these criteria, which are consistent with the criteria that we have long used when laches has been asserted as an affirmative

defense in civil cases. *See, e.g., Rodriques,* 466 A.2d at 311 (holding that the defense of laches requires a showing of "negligence to assert a known right, seasonably coupled with prejudice to an adverse party"); *see also Pukas v. Pukas,* 104 R.I. 542, 546, 247 A.2d 427, 429 (1968) ("As is well settled, laches does not arise out of delay alone but out of delay which, unexplained, operates to the prejudice of the other party."); *Gorham v. Sayles,* 23 R.I. 449, 453, 50 A. 848, 850 (1901) (" 'Laches in a legal significance is not mere delay, but delay that works a disadvantage to another.' ").

Whether or not there has been unreasonable delay and whether prejudice to the adverse party has been established are both questions of fact, and a determination must be made in light of the circumstances of the particular case. [ ] *Lombardi v. Lombardi,* 90 R.I. 205, 209, 156 A.2d 911, 913 (1959) (" 'What constitutes laches is to be determined in the light of the circumstances of that particular case.' \* \* \* Ordinarily it is a question of fact and is addressed to the sound discretion of the chancellor."); *see also Pukas,* 104 R.I. at 547, 247 A.2d at 429; *Arcand v. Haley,* 95 R.I. 357, 364, 187 A.2d 142, 146 (1963).

*Raso,* 884 A.2d at 395–96 (footnotes omitted).

Because the Superior Court neither made a finding whether the State could meet its burden to prove that Raso unreasonably delayed in seeking relief, nor whether the State was prejudiced by the delay, the Supreme Court remanded the case for the Superior Court to make the necessary findings and conclusions of law. *Raso,* 884 A.2d at 396. We are persuaded that a similar result governs the instant case. *See, e.g., Cushman v. Anne Arundel County,* 246 Md. 525, 532, 228 A.2d 825 (1967) (remanding an action on a bill of complaint for specific performance because the trial court did not receive evidence, by way of testimony or stipulation, in support of its determination that laches acted to bar the complaint).

In reaching this conclusion, we agree with the *Raso* Court that the standard is whether the State has met its

burden based on a preponderance of the evidence. The "preponderance of the evidence" standard is simply " 'when a court is weighing one set of circumstances against another. Ordinarily in such a balancing process, a court simply determines which side outweighs the other, without being concerned with how much or how clearly one side may outweigh the other.' " *Bryant v. State*, 374 Md. 585, 602–603, 824 A.2d 60 (2003) (quoting *Foster v. State*, 304 Md. 439, 477–78, 499 A.2d 1236, *cert. denied*, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984)). However, in performing that balance, we agree with appellant that "the State had the opportunity to prove the two prongs of the laches defense, and it did not carry its burden to prove either one."

Here, the post-conviction court expressly declined to hear testimony or receive any evidence on the matter and instead relied on the pleadings and transcripts from appellant's jury trial and guilty pleas. This was so despite the fact that appellant was immediately available to testify, accompanied by interpreters, and that his trial counsel was "on call." We further note that some of appellant's claims concerned failure of trial and appellate counsel to file an appeal from his jury trial and an application for leave to appeal from his guilty pleas. This information would appear to bear on the first prong of the inquiry, *i.e.*, whether there was an unreasonable or impermissible delay in asserting a particular claim.

As for the second prong, requiring some showing of prejudice to the State, while the State proffered that the State's Attorney no longer had a file in these cases, the record does not reveal any attempt to locate or contact any of the victims, particularly the younger ones. While it was not unreasonable for the State and the court to assume that some of the victims were unavailable, there is no clear indication in this record, either by way of proffer, stipulation, public record, or otherwise, that this assumption was well founded. While the State's Attorney may have lost the files in these cases, the names of the victims, their ages, and the location of the crimes

were well documented.[14]

In sum, we hold that the filing of a post-conviction petition in a case where the petitioner was sentenced prior to October 1, 1995, may be barred under the affirmative defense of laches. In reaching that determination, the party asserting the defense, the State, must show by a preponderance of the evidence that: (1) there was an unreasonable or impermissible delay in asserting a particular claim; and, (2) that the delay prejudiced the State. Because the record in this case is insufficient to conclude that appellant's claim was barred by laches, we shall vacate the judgment and remand for further proceedings consistent with this opinion.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE ASSESSED TO MONTGOMERY COUNTY.**

---

**14.** Further, the State was unsure whether appellant's sentences had expired on some of the guilty pleas. Surely, the State could have confirmed this assumption had it obtained appellant's commitment records or other similar documentation concerning those convictions. We also note that, generally, if a sentence for a particular conviction has been served so that the person is no longer either incarcerated, on probation, or on parole on account of that conviction, the person may not file a post conviction petition regarding that conviction. *See* C.P. § 7–101; *see also Fairbanks, supra,* 331 Md. at 492 n. 3, 629 A.2d 63 ("Post-conviction and habeas corpus remedies are available only if the defendant is in custody or subject to conditions of parole or probation"). *See McMannis v. State,* 311 Md. 534, 547, 536 A.2d 652 (1988) (concluding that, where petitioner was not in custody, the circuit court did not have jurisdiction to consider the postconviction claim).